# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION NO. |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | |
| | **JURY TRIAL DEMAND** |
| WAL-MART STORES EAST, LP, | |
| Defendant. | |

## NATURE OF THE ACTION

This action is filed pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Calvin Hagan ("Mr. Hagan"), who was adversely affected by such practices. Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges that Defendant, Wal-Mart Stores East, LP ("Defendant"), violated the ADA when it failed to provide a reasonable accommodation for Mr. Hagan and discharged him because of his disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),
1

42 U.S.C. §§ 2000e-5(f)(l) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Western Division.

## PARTIES

4. The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII. 42 U.S.C. § 2000e-5(f)(l) and (3).

5. At all relevant times, Defendant, a Delaware corporation, operated a chain of hypermarkets, discount department stores, grocery stores, and distribution centers in North Carolina, including Walmart Supercenter Store No. 4484 located at 8000 Town Dr., Raleigh, NC 27616 (the "Facility").

6. At all relevant times, Defendant has continuously done business in the State of North Carolina and in Wake County, North Carolina and has continuously maintained at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

9. More than thirty (30) days prior to the institution of this lawsuit, Mr. Hagan filed a charge with the Commission alleging violations of the ADA by Defendant.

10. On August 11, 2021, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

11. The Commission engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. By letter dated September 20, 2022, the Commission notified Defendant that conciliation had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

15. Since at least on or about April 2017, Defendant has engaged in unlawful employment practices at the Facility in violation of Section 102 of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5), by failing to provide a reasonable accommodation to Mr. Hagan and terminating his employment because of his disability.

16. Mr. Hagan is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

17. Mr. Hagan has, generalized convulsive epilepsy, a physical impairment that substantially limits the major life activity of his body's neurological function.

18. During the period from April 2017 through August 2018, Mr. Hagan's disability caused seizures of such severity, duration, and frequency that Mr. Hagan was unable to work for limited intermittent periods and required medical treatment on multiple occasions between April 2017 and August 2018.

19. On or about June 7, 2012, Defendant hired Mr. Hagan as a Cashier.

20. Defendant promoted Mr. Hagan to Customer Service Manager on or around February 6, 2016.

21. Defendant promoted Mr. Hagan to General Merchandise Support Manager on or around May 28, 2016.

22. After his promotion to General Merchandise Support Manager, Defendant transferred Mr. Hagan to the Facility as a General Merchandise Support Manager.

23. At all relevant times, Mr. Hagan was qualified to perform the essential functions of his job with or without reasonable accommodation.

24. At all relevant times, Mr. Hagan performed his job in a manner that met Defendant's legitimate job performance expectations.

## COUNT I:
## Failure to Accommodate in Violation of the ADA

25. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 24 above.

26. From around April 2017 until on or about August 4, 2018, Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, by failing to provide reasonable accommodation to Mr. Hagan for his disability.

27. Beginning in April 2017 and continuing, Mr. Hagan began experiencing seizures caused by his generalized convulsive epilepsy. The disability-related seizures caused Mr. Hagan

4

to lose consciousness, bite his tongue, and release his bowels. After a seizure, Mr. Hagan would wake up feeling confused and disoriented and it often took between forty-five minutes and twenty-four hours for him to completely recover.

28. On several occasions between April 2017 and August 2018, the physical symptoms related to Mr. Hagan's disability required him to seek emergency medical treatment.

29. Beginning in April 2017 and continuing throughout the remainder of his employment, Mr. Hagan kept Defendant apprised of his disability, the physical symptoms related to his disability, and his disability-related medical treatments.

30. Beginning in April 2017 and continuing throughout the remainder of his employment, Mr. Hagan communicated with Defendant each time he needed to be excused from work because of his disability and/or medical treatment related to his disability.

31. On or about July 24, 2017, Mr. Hagan suffered a seizure, related to his disability, which required medical treatment.

32. As a result of the seizure, Mr. Hagan missed work on July 24, 2017.

33. Mr. Hagan informed Defendant that his July 24, 2017 absence was because he suffered a seizure which required medical treatment.

34. On or about July 25, 2017, when Mr. Hagan returned to work from his disability-related medical issue, he notified Defendant's management about his disability and treatment, and provided Defendant with a doctor's note documenting his absence.

35. That same day, July 25, 2017, Mr. Hagan had another seizure at the Facility which necessitated transport to the emergency room.

36. Mr. Hagan received a doctor's note excusing him from work until July 28, 2017 because of his disability.

5

37. On or about July 25, 2017, Mr. Hagan requested a disability-related reasonable accommodation from Defendant's third-party benefits provider (the "Provider"). Specifically, Mr. Hagan requested (a) intermittent leave and (b) excused disability-related absences.

38. On or about July 26, 2017, the Provider requested that Mr. Hagan's doctor complete a medical information form and return it by August 14, 2017.

39. On or about July 26, 2017, the Provider informed the Facility's Personnel Coordinator about Mr. Hagan's disability-related reasonable accommodation request.

40. On or around August 4, 2017, Mr. Hagan provided a copy of the medical information form completed by Mr. Hagan's doctor to the Personnel Coordinator and requested that she fax the form to the Provider. The Personnel Coordinator agreed to do so.

41. On or about August 15, 2017, the Provider informed the Personnel Coordinator and other members of the Facility management team that Mr. Hagan's request for a disability-related reasonable accommodation had been denied because it did not receive the medical information form needed for the leave before the due date.

42. Mr. Hagan was never informed by the Provider, Personnel Coordinator, or any other member of the Facility management that his request for disability-related reasonable accommodation had been denied, that the Provider had not received his medical information, or that he had the ability and opportunity to submit additional medical information.

43. The Provider did not communicate directly with Mr. Hagan about his disability-related accommodation request.

44. Between August 2017 and December 2017, Mr. Hagan experienced occasional seizures caused by his disability which made him miss work. Beginning in January 2018, Mr. Hagan's disability intensified, and his seizures increased in frequency and severity.

45. Between January 1, 2018 and March 31, 2018, Mr. Hagan arrived late to work on eight occasions and was absent from work on two occasions due to his disability.

46. On each occasion when Mr. Hagan arrived late or was absent between January 1, 2018 and March 31, 2018, Mr. Hagan informed Defendant that his tardiness or absence was due to a seizure.

47. On or about March 30, 2018, Mr. Hagan experienced a severe disability-related seizure which required medical treatment. He received a doctor's note documenting the reason for his absence and excusing him from work on March 31, 2018.

48. On or about March 31, 2018, Mr. Hagan gave the doctor's note to the Personnel Coordinator and showed a copy of the doctor's note to an assistant store manager at the Facility. The Personnel Coordinator told Mr. Hagan that she would show the note to the Store Manager at the Facility.

49. On or about April 13, 2018, the Store Manager informed Mr. Hagan he was being demoted to a Deli Sales Associate position because of his disability-related absences.

50. On or about April 13, 2018, Mr. Hagan told the Store Manager that he had a disability, that his absences were due to his disability, and that he had requested a disability-related reasonable accommodation through the Provider.

51. Mr. Hagan continued to experience seizures which caused him to arrive late for his shift on May 6 and May 15, 2018, and to miss his shift on June 24, 2018. Mr. Hagan informed Defendant that his tardiness and absences were because he had a disability-related seizure.

52. In or about June 2018, an assistant store manager at the Facility approached Mr. Hagan and told him to "watch" his absences. Mr. Hagan told the assistant store manager that he

7

had a disability, that his absences were due to his disability, and that he had requested a disability-related reasonable accommodation through the Provider.

53. The assistant store manager directed Mr. Hagan to speak to the Personnel Coordinator, which Mr. Hagan did. When Mr. Hagan asked the Personnel Coordinator about the status of his disability-related reasonable accommodation, the Personnel Coordinator told Mr. Hagan she had submitted the request to the Provider, but she had no more information about Mr. Hagan's disability-related reasonable accommodation.

54. Mr. Hagan experienced another disability-related seizure on July 25, 2018 for which he received medical treatment.

55. Upon his return to work after the July 25, 2018 seizure, Mr. Hagan provided Defendant with a doctor's note excusing his July 25, 2018 absence.

56. On or about August 4, 2018, an assistant store manager approached Mr. Hagan after he arrived at the Facility for his shift and asked Mr. Hagan why he was at work because Defendant had terminated Mr. Hagan on August 3, 2018.

57. At the time he learned about his termination, Mr. Hagan explained to the assistant store manager that he had a disability, that his absences were due to his disability, and that he had requested a disability-related reasonable accommodation through the Provider.

58. Defendant failed to grant Mr. Hagan's requests for reasonable accommodation including his requests for (a) intermittent leave or (b) excused disability-related absences.

59. Providing Mr. Hagan with intermittent leave or excusing his disability-related absences would not have imposed an undue hardship on Defendant.

60. Defendant failed to provide a reasonable accommodation to Mr. Hagan, a qualified individual with a disability.

61. Defendant failed to engage in the interactive process with Mr. Hagan.

62. The practices complained of above are unlawful and in violation of the ADA.

63. The practices complained of above have deprived Mr. Hagan of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

64. The practices complained of above were intentional.

65. The practices complained of above were conducted with malice or with reckless indifference to the federal protected rights of Mr. Hagan.

66. As a direct and proximate result of Defendant's violation of the ADA, Mr. Hagan suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT II:
## Disability Discrimination in Violation of the ADA

67. The Commission re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 66 above.

68. On or about August 3, 2018, Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, when it terminated Mr. Hagan's employment because of his disability.

69. On or about August 3, 2018, Defendant discharged Mr. Hagan for accruing more than nine unauthorized absence-related occurrence points during the preceding six-month period in violation of Defendant's Attendance and Punctuality Policy.

70. Specifically, Defendant discharged Mr. Hagan for being late for, or missing, work on February 3, 2018, February 6, 2018, February 13, 2018, February 17, 2018, February 25, 2018, March 6, 2018, March 17, 2018, March 18, 2018, March 24, 2018, March 31, 2018, May 6, 2018,

9

May 15, 2018, June 24, 2018, and July 25, 2018. Under Defendant's policy, a single unauthorized absence can result in more than one occurrence point.

71. All of Mr. Hagan's absences or attendance issues were because of Mr. Hagan's disability.

72. Mr. Hagan informed Defendant at the time of each absence or tardy that the absence or tardy was related to his disability.

73. Nevertheless, Defendant discharged Mr. Hagan because of his disability-related absences.

74. The practices complained of above are unlawful and in violation of the ADA.

75. The practices complained of above have deprived Mr. Hagan of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

76. The practices complained of were intentional.

77. The practices complained of were done with malice or reckless indifference to the federal protected rights of Mr. Hagan.

78. As a direct and proximate result of Defendant's unlawful conduct, Mr. Hagan suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant, from discriminating against individuals because of their disabilities, including termination based on

disability and failure to provide reasonable accommodation to qualified individuals with disabilities, in violation of the ADA.

      B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of past and present unlawful employment practices.

      C.      Order Defendant to make Calvin Hagan whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

      D.      Order Defendant to make Calvin Hagan whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

      E.      Order Defendant to make Calvin Hagan whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of health insurance benefits, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

      F.      Order Defendant to pay to Calvin Hagan punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this 30th day of March, 2023.

    U.S. EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION

    GWENDOLYN YOUNG REAMS
    Acting General Counsel
    U.S. EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
    131 M Street, NE
    Washington, D.C. 20507

    CHRISTOPHER LAGE
    Deputy General Counsel

    MELINDA C. DUGAS
    Regional Attorney

    ***/s/ Gabriel O. Mondino***
    Gabriel O. Mondino, Trial Attorney
    LA State Bar No. 31514
    EEOC, Richmond Local Office
    400 N. Eight Street, Suite 350
    Richmond, VA 23219
    Telephone: (804) 362-6916
    Facsimile: (704) 954-6412
    Email: gabriel.mondino@eeoc.gov

    **/s/ Samuel Harrington Williams**
    Samuel H. Williams, Trial Attorney
    N.C. Bar No. 49622
    EEOC, Raleigh Area Office
    434 Fayetteville Street, Suite 700
    Raleigh, NC 27601
    Telephone: (984) 275-4820
    Email: Samuel.Williams@eeoc.gov

    **ATTORNEYS FOR PLAINTIFF**